IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID WILLIAMS, SR., #B83970, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1114-SMY |
| | ) |
| ADAM DIERCKS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff David Williams, Sr., an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He alleges that Defendant Adam Diercks used excessive force against him during his February 1, 2020, arrest in violation of the Fourth Amendment. Now pending before the Court is Diercks' Motion for Summary Judgment (Doc. 51), to which Williams has not responded. For the following reasons, the motion is **GRANTED**.

**Factual Background**

Construed in the light most favorable to Williams, the evidence and reasonable inferences establish the following facts relevant to the pending motion:

Williams, his then-girlfriend Brandy Dille, neighbor Kimberly Schuetz, and friend Tommy Martinez were partying at Schuetz's apartment on the evening of February 1, 2020 (Doc. 53-2, pp. 11-13; pp. 16-18). Williams and Dille got into an argument and began screaming at each other. *Id*. Dille called 911 and, according to Williams, told the operator that Williams was high on methamphetamine and violent. *Id*.

Dille went back to the apartment she shared with Williams, which was located near

Schuetz's apartment. *Id*. at pp. 21-22. Williams testified that he wanted to get his personal belongings from their apartment, but the door was locked. *Id*. He knocked on the door, but Dille refused to open it. *Id*. He decided to go back to Schuetz's apartment until he could retrieve his personal belongings. *Id*.

Officer Adam Dierks and his partner Officer Mahan were dispatched to the apartment for a possible break-in in progress (Doc. 53-1, p. 1; p.13). Upon arriving on the scene, Officer Dierks observed Dille and Schuetz standing outside by some vehicles in the back of the apartment complex. *Id.* Dille told Officer Dierks that Williams was "going crazy and breaking stuff" and that he was "high on 'ice' and out of control." *Id*. Officer Diercks heard someone screaming and yelling inside the apartment. *Id*. Schuetz told Officer Diercks that her five-month-old baby was inside the apartment and that she feared for her baby's wellbeing with Williams inside the apartment. *Id*.

Williams exited the apartment holding a large glass vodka bottle, and Officer Diercks observed that he appeared "very angry, yelling and screaming" (Doc. 53-1, p. 1; p.p. 13-14). Officer Dierks told Williams to drop the bottle, and Williams put the bottle on the ground (Doc. 53-1, p. 2; Doc. 53-2, p. 24). Williams testified that the officers frisked him, took his wallet and cellphone out of his pocket, and handed the items to Dille. *Id*. The officers then grabbed Williams by his arms to arrest him (Doc. 53-1, p. 2). Williams pulled his hands free and attempted to walk away (Doc. 53-2, p. 30). A scuffle ensued and the officers pulled Williams to the ground (Doc. 53-1, p. 2). Officer Dierks tried to get Williams' rights arm behind his back while giving verbal commands to comply while Officer Mahan attempted to gain control over Williams' left arm. *Id*. Williams continued to resist and pull away. *Id*.

Williams was able to get up to his feet. He then he grabbed Officer Dierks' right and left

upper thigh and groin area and tackled him to the ground (Doc. 53-1, p. 2; p. 14). Officer Dierks used a closed hand technique to try and gain control of Williams (Doc. 53-1, p. 2; p. 14). Officer Mahan deployed his department issued Taser with little to no effect on Williams. *Id*. Officer Mahan deployed his Taser again (Doc. 53-1, p. 2). The officers eventually were able to get Williams' hands behind his back and placed them in handcuffs. *Id*.

The officers requested Med Star because Williams had been tased (Doc. 53-1, p. 3; p. 15). Officer Dierks rode in the ambulance with the Med Star crew due to Williams' aggressive behavior. *Id*. The Nurse's Clinical Report notes that Williams was incoherent (Doc. 53-3).

Williams was charged with Criminal Damage to Property over $300.00, Domestic Battery, Interfering with Reporting Domestic Battery, Home Invasion, Resisting a Peace Office, and Aggravated Battery on a Peace Officer (Doc. 53-1, p. 3; p. 16). He pleaded guilty to aggravated battery on a police officer and received a four-year sentence (Doc. 53-2, p. 7). During his plea hearing, Williams admitted that he intentionally grabbed Officer Diercks in the groin while the officer was trying to arrest him (Doc. 53-5, pp. 14-15).

Williams testified that, based on the information Officer Diercks had available to him at the time of the incident, Officer Diercks could have thought Williams was high and dangerous (Doc. 53-2, pp. 33-34).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is, if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

      A claim for excessive force during an arrest invokes the Fourth Amendment's protection against unreasonable seizures.  *Turner v. City of Champlain*, 979 F.3d 563, 567 (7th Cir. 2020).  The reasonableness of the seizure is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  This is a fact-intensive assessment, focused on whether the use of force was reasonable under the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  Whether a particular use of force was reasonable is a question of law for the court to decide.  *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018).

      Here, Officer Diercks' use of force was objectively reasonable.  Upon arriving at the scene, Schuetz and Dille told the officers that Williams was under the influence of drugs and was being violent.  Williams was screaming and yelling when he exited the apartment building and Officer Diercks observed him holding a glass vodka bottle.  Williams acknowledges that, based on the information the officers had available to them at the time of the incident, it was reasonable for them to conclude that he was high and dangerous.  And the undisputed facts establish that Williams actively resisted arrest and at one point, grabbed Officer Diercks' thigh and groin area and tackled him to the ground.  Officer Mahan was required to discharge his taser twice to subdue and handcuff Williams.  In sum, under the circumstances, Officer Diercks' actions were objectively reasonable

given Williams' behavior, his attempt to resist arrest, and his potential threat to the safety of the officers and others.[1]

## Conclusion

For the foregoing reasons, Defendant Adam Dierck's Motion for Summary Judgment (Doc. 51) is **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:  January 26, 2023**

**STACI M. YANDLE**
**United States District Judge**

---

[1] Because Williams has failed to establish a constitutional deprivation, the Court need not address Diercks' qualified immunity argument.